[842 NYS2d 390]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENITO
OLIVERA, Appellant.

First Department, September 13, 2007

**APPEARANCES OF COUNSEL**

*Steven Banks, The Legal Aid Society*, New York City (*John Schoeffel* of counsel), and *Arnold & Porter LLP*, New York City (*Ken L. Hashimoto* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Angela DiGiglio, Michael S. Morgan* and *Megan S. Mueller* of counsel), for respondent.

**OPINION OF THE COURT**

Kavanagh, J.

Defendant is entitled to a new trial because the trial court erred by denying his request to charge the jury on the lesser included offense of criminal possession of a controlled substance in the seventh degree.

On March 31, 2004, the New York City Police Department assigned a field team of 10 to 12 police officers to conduct a buy/bust drug operation in the vicinity of Lexington Avenue and 110th Street. A police officer working undercover wore a transmitter and was in radio contact with members of the field team throughout the operation. According to the officer, she came into contact with defendant and Eduardo Cestalano at approximately 2:50 P.M. and after a brief conversation told them she was "looking for manteca" (Spanish for heroin). Defendant asked her how many she wanted, to which she responded "let me get two." Defendant then handed the officer two glassine envelopes of heroin each stamped with the word "Holiday." Following defendant's instruction, the officer gave $20 in prerecorded buy money to Cestalano and walked away.

As she left the area, the officer immediately notified the field team by radio that she had made a positive buy and provided a description of defendant and Cestalano as well as their approximate location. Detective Pabon observed the two men walking away from the undercover officer and kept them under surveillance until they were taken into custody by other members of the field team. As defendant and Cestalano were being searched at the scene, five glassine envelopes of heroin bearing the stamp "Holiday" were recovered on the ground next to defendant's left foot. The prerecorded money used by the undercover officer to purchase the drugs was not recovered.

Defendant was indicted for criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]).[1] At the charge conference defendant's counsel requested that a charge of simple possession of heroin—criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03)—be submitted to the jury as a lesser included offense. The trial court denied the request, finding that the suggestion that defendant possessed the heroin in question for his own use and not with the intent to sell did not represent a reasonable view of the evidence. The jury convicted defendant of criminal possession with intent to sell, but could not arrive at a verdict as to the charge of criminal sale.

A trial court is obligated to submit a lesser included offense for the jury's consideration where the party requesting the charge shows "that it is an offense of lesser grade or degree and that in all circumstances, not only in those presented in the particular case, it is impossible to commit the greater crime without concomitantly, by the same conduct, committing the lesser offense" (*People v Glover*, 57 NY2d 61, 63 [1982]; CPL 1.20 [37]), and second, that there is a reasonable view of the evidence that would support a finding that the defendant committed the lesser offense but not the greater (CPL 300.50 [1]; *People v Glover*, 57 NY2d at 63-64).

Criminal possession of a controlled substance in the seventh degree is undisputedly a lesser included offense of criminal possession of a controlled substance in the third degree (*People v Cabrera*, 268 AD2d 316, 317 [2000], *lv denied* 94 NY2d 945 [2000]). The only difference between the two crimes is that criminal possession in the third degree carries with it the additional element that the drug in question be possessed "with intent to sell it" (Penal Law § 220.16 [1]). Here the issue to be decided is whether a juror could reasonably conclude from the evidence presented at trial that defendant possessed the heroin found at his feet for his own personal use and not for the purpose of selling it.

Jurors are accorded broad prerogatives as to their evaluation of the credibility of evidence introduced at trial (*People v Bleak-*

---

1. Cestalano was also charged with criminal possession in the third degree and criminal sale in the third degree. The jury failed to reach a verdict on either charge against Cestalano, however he was later retried and convicted on both counts. Cestalano's conviction was affirmed (*People v Cestalano*, 40 AD3d 238 [2007]).

*ley*, 69 NY2d 490, 495 [1987]). It is for the jury to decide what weight is to be given to evidence and if reasonable questions are raised concerning the credibility of such evidence, the jury has it within its power to completely disregard that evidence in arriving at a verdict. Here significant gaps existed in the prosecution's proof from which a juror could reasonably conclude that the transaction culminating in the sale of heroin did not take place. In that regard, I respectfully disagree with the dissent's assertion that the undercover officer's testimony regarding negotiations culminating in the sale is uncontroverted. In fact, the undercover's credibility was the principal issue raised at trial by the defense and was under constant attack throughout. The jury's failure to arrive at a verdict on the criminal sale of a controlled substance charge is stark proof that those reservations about the undercover's credibility did indeed exist. For example, the prerecorded buy money was not found on the person of defendant or Cestalano despite the fact that both men were under surveillance from shortly after they left the undercover until they were placed under arrest. The prosecution was never able to put forward a credible explanation based on the evidence introduced at trial that accounted for the failure of the police to recover that money from Cestalano or defendant after they were taken into custody and searched.[2] Also, no member of the field team testified to overhearing any part of the undercover's conversation with defendant negotiating the terms of the sale despite the fact that the field team had the officer under radio surveillance throughout the entire transaction. From all accounts, the equipment was functioning and operational, and in fact was used by the undercover officer to notify members of the covering team that the sale had taken place and that defendant and his companion were leaving the area. These omissions in the prosecution's proof could clearly provide a juror with a reasonable basis for concluding that the events culminating in the sale of drugs may not have taken place. Absent evidence of the sale, all that is left which connects the defendant to any criminal activity are the five glassine envelopes of heroin found on the ground next to his feet.[3] The possession of such a modest amount of heroin, absent more,

---

2. The dissent's view that buy money is often not recovered because drug traffickers in response to police tactics have developed techniques that allow them to quickly dispose of such evidence has no support in the record.

3. With respect to the glassine envelopes marked "Holiday" which the undercover claims to have purchased from the defendant, if the jury did not believe the undercover with respect to her account of the sale, it was within

would certainly support a finding that it was possessed by defendant for his own consumption and not for sale (*compare People v Rizzo*, 279 AD2d 314 [2001], *lv denied* 96 NY2d 805 [2001]).

To be clear, a lesser-included charge of simple possession will not be required in every prosecution of sale or possession with intent to sell where buy money is not recovered or the undercover's testimony about the transaction is uncorroborated. In this case, however, the arresting officer gave testimony that was, by itself, sufficient to support a simple possession charge, even if the undercover's testimony was discredited. Under the circumstances, criminal possession of a controlled substance in the seventh degree represented a reasonable view of the credible evidence presented at trial, and it should have been submitted.

Therefore, the judgment of Supreme Court, New York County (Ronald A. Zweibel, J.), rendered December 17, 2004, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 6 to 12 years, should be reversed, on the law, the judgment vacated, and the matter remanded for a new trial.

WILLIAMS, J. (dissenting). The trial court properly declined to submit criminal possession of a controlled substance in the seventh degree as a lesser included offense of criminal possession of a controlled substance in the third degree. Viewing the evidence in the light most favorable to defendant, there is no reasonable view of the evidence to support a finding that he committed the lesser offense but not the greater (*People v Scarborough*, 49 NY2d 364, 368-370 [1980]; CPL 300.50 [1]). The defendant presented no evidence at trial and the only record evidence is that once the undercover requested drugs, defendant promptly responded by soliciting the quantity she desired and consummating the sale, an indication of intent to sell. Nor was any evidence submitted that indicated that defendant possessed the heroin purely for his personal use (*see People v Henry*, 272 AD2d 238 [2000], *lv denied* 95 NY2d 890 [2000] [submission of seventh-degree possession unwarranted where there was evidence of intent to sell and none indicating that defendant possessed the drugs only for personal use]). Finally, even if the jury credited the undercover officer's testimony that defendant was attracted to her, and inferred that he might have given her the

---

its prerogative to discount her testimony concerning how she came into the possession of these envelopes.

drugs for free to curry her favor, the conveyance would still constitute an illegal sale (*see People v Starling*, 85 NY2d 509, 514-515 [1995]; Penal Law § 220.00 [1]), thus demonstrating intent to sell.

This intent was duly established notwithstanding the failure to recover the prerecorded buy money used, or to corroborate the transaction successfully via Kel transmission, and notwithstanding the jury's inability to reach a verdict on the sale count. Failure to recover the prerecorded buy money is not an infrequent occurrence, inasmuch as drug traffickers, in response to police tactics, have developed systematic techniques to quickly and covertly dispose of such evidence (*see generally People v Brown*, 97 NY2d 500, 505-507 [2002]; *People v Kelsey*, 194 AD2d 248, 252-253 [1994]). Such failure does not preclude a valid conviction (*see People v Aguayo*, 200 AD2d 541, 542 [1994], *lv denied* 83 NY2d 963 [1994]; *People v Johnson*, 187 AD2d 404 [1992], *lv denied* 81 NY2d 842 [1993]); it is merely an issue for the trier of fact to consider in weighing the evidence of guilt generally and the credibility of the testifying police officers (*see People v Benjamin*, 292 AD2d 191 [2002], *lv denied* 98 NY2d 635 [2002]; *People v Cuevas*, 232 AD2d 234 [1996]; *People v Billups*, 171 AD2d 513, 513-514 [1991], *lv denied* 78 NY2d 920 [1991]). For similar reasons, failure to offer corroborating evidence provided by Kel equipment, when used, is not fatal to a conviction. Due to the technical limitations of Kel equipment and the inherent unpredictability of a buy-and-bust operation, it may not provide evidence in a particular case. Similarly, the failure to convict defendant for a contemporaneous drug sale is not fatal to his conviction of possession with intent to sell (*People v Freeman*, 298 AD2d 311, 311-312 [2002]; *People v Vaughn*, 242 AD2d 458 [1997], *lv denied* 91 NY2d 837 [1997]; *People v Cruz*, 197 AD2d 630, 631 [1993], *lv denied* 82 NY2d 923 [1994]).

Contrary to defendant's assertion, *People v Devonish* (6 NY3d 727 [2005]) is not controlling here. In that case, involving second-degree burglary and its lesser included offense second-degree criminal trespass, the defendant testified as to his alleged innocent intent in entering the premises. In addition, there was testimony by a contractor that he stored tools on the premises and that one of the burglary tools found in the defendant's possession when he was discovered on the premises definitely belonged to the contractor, and that the other tools might have also. This record evidence allowed the jury to reasonably infer that the defendant may not have entered the premises with an intent to commit a crime. In the instant mat-

ter, no similar record evidence of defendant's intent to commit only the lesser included offense exists; hence any jury inference would be impermissibly based on sheer speculation and surmise (*People v Butler*, 84 NY2d 627, 632 [1994]; *People v Scarborough*, 49 NY2d at 371-372; *People v Mercer*, 214 AD2d 343 [1995], *lv denied* 86 NY2d 783 [1995]).

SAXE, J.P., and FRIEDMAN, J., concur with KAVANAGH, J.; WILLIAMS and BUCKLEY, JJ., dissent in a separate opinion by WILLIAMS, J.

Judgment, Supreme Court, New York County, rendered December 17, 2004, reversed, on the law, the judgment vacated, and the matter remanded for a new trial.